PEDRO MORA Y. LEDON AND ANOTHER, RESPONDENTS, *v.* FREDERICK C. HAVEMEYER AND OTHERS, APPELLANTS.

*Agreement to ship goods sold, within a time fixed by the terms of the agreement — when the obligation of the vendor is not discharged by putting the goods on a steamer and receiving a bill of lading.*

On February 7, 1885, at the city of New York, the plaintiffs and defendants entered into an agreement in writing for the sale by the plaintiffs of about 1,000 tons of Cuba Muscovado sugar for shipment within thirty days from February 7, 1885, by steamer or sail, at the sellers' option, the buyers to provide marine insurance, the plaintiffs agreeing to have the sugar transported from Cuba to New York, and there delivered to the defendants. Thereafter the plaintiffs caused the sugar to be put on board a steamer called the Gladiolus, at Sagua La Grande, in Cuba, the loading being completed on March seventh, on which day a bill of sale was delivered to them. The vessel did not sail until March thirteenth, being held at Sagua until that day by the charterer for the purpose of obtaining, if possible, a full cargo. Before chartering the Gladiolus the plaintiffs had chartered another steamer, which did not arrive in time. On February twenty-eighth they applied to the defendants for an extension of the time, and upon their refusal to extend it they asked them to enlarge their contract to 1,500 tons,

which was the capacity of the Gladiolus, which application was also refused. Upon the arrival of the steamer at New York, on March seventeenth, the defendants refused to accept a delivery of the sugar or to pay for the same.

*Held,* that they were justified in so doing, as the sugar, though put on board the steamer within the time mentioned in the contract for shipment, did not actually start on its voyage until four days after the expiration of the time mentioned in it.

That, as the plain intention of the parties to the contract was to secure such a timely delivery of the sugar in New York, as would follow the beginning of its transportation from Cuba within the thirty days mentioned, the plaintiffs' obligation was not discharged by merely putting the sugar on the Gladiolus within the thirty days, unaccompanied by any effort on their part to have the vessel start on her voyage within that time.

*Tobias* v. *Lissberger* (105 N. Y., 404) followed; *Bowes* v. *Shand* (L. R., 2 App. Cas., 455) distinguished.

APPEAL by the defendants from a judgment in favor of the plaintiffs entered upon a decision of the court at the circuit, upon a trial before the court without a jury.

On the 7th day of February, 1885, at the city of New York, the plaintiffs and defendants entered into an agreement in writing whereby the plaintiffs agreed to sell to the defendants, and the defendants agreed to buy from them about 1,000 tons of Cuba Muscovado sugar for shipment within thirty days from the 7th day of February, 1885, by steamer or sail at the seller's option, the buyers to provide marine insurance. The sugar was in Cuba and the plaintiffs agreed to have it transported to New York, and there to be delivered to the defendants. The plaintiffs caused the sugar to be put on board the steamer called the Gladiolus, at Sagua La Grande, in Cuba, within the thirty days, the loading having been begun on the 5th day of March and completed on the 7th day of March, 1885, on which last mentioned day a bill of lading for said sugars was signed by the master of the Gladiolus and delivered to the plaintiffs. The charterer of the vessel held her at Sagua until March 13, 1885, for the purpose of obtaining if possible a full cargo, the capacity of the vessel being 1,500 tons. She sailed March thirteenth for New York, and arrived on the seventeenth of that month, when the plaintiffs tendered to the defendants the 1,000 tons of sugar and demanded payment, but the defendants refused to accept a delivery of the sugar or to pay for the same. The

recovery was the difference between the price of the sugar as named in the contract, and the sum realized by the plaintiffs upon a resale of it by the plaintiffs.

*John E. Parsons*, for the appellants.

*J. Warren Greene*, for the respondents.

MACOMBER, J.:

It stands clearly proved, and is so found by the court as a fact, that the sugars which the plaintiffs sold to the defendants, though put on board the steamer within the time mentioned in the contract for shipment, did not actually start on their voyage until four days after the expiration of the thirty days mentioned in the contract. The question, therefore, is, whether the plaintiffs duly performed their part of the contract, which was a condition precedent to a right of recovery against the defendants. That is to be determined mainly by the meaning and application of the word "shipment" as used in the written agreement. There is a variety of meanings given to that word, each appearing according to the particular circumstances of the case in which it is used. Shipment sometimes means a mass of merchandise which is placed on board a vessel. It may mean, also, the act of placing the merchandise on board; and it may mean the act of transporting the merchandise or the beginning of the voyage. In order to ascertain its true meaning, as used in the contract before us, recourse should be had to the following facts and circumstances as disclosed by the case : The selection of the vessel, whether steamer or otherwise, was left to the plaintiffs. Before chartering the Gladiolus, which brought the sugars to New York, the plaintiffs had chartered the steamer known as the Richmond for that purpose, which was on her way from Scotland, but which did not, in fact, arrive in Cuba in time. On February 28, 1885, the plaintiffs applied to the defendants to extend the time for the shipment of the sugars, which was refused. On March second the plaintiffs' agent cabled them, recommending shipment by another conveyance than the Richmond. On March third the plaintiffs wrote their agents in New York that they would probably ship by the Gladiolus which they expected at Sagua on the following day. The capacity of the Gladiolus being 1,500 tons, the plaintiffs, through

their agents, applied to the defendants to enlarge their contract to that quantity. This application was also refused. The plaintiffs contracted to deliver the sugars to the defendants in the city of New York. The plaintiffs also had the right of selection of the port from which to ship the sugars.

The plain intention of the parties to the contract was to secure such a timely delivery of the sugars in New York as would follow the beginning of their transportation from Cuba within the thirty days mentioned. How did it benefit the defendants to have the sugars in the hold of the vessel lying at the dock in Sagua, rather than in the warehouse of the plaintiffs? Indeed, the circumstances under which the plaintiffs put the sugars on board the Gladiolus tend to show that they were conscious, in doing that act, that they were not fulfilling the terms of their contract, because they knew that the tonnage of the vessel was so much greater than was required to carry these sugars that the charterer was not likely to start upon his voyage until he had obtained a full cargo, namely, 1,500 tons instead of 1,000. The mere placing of the sugars on board is not what the parties intended by the contract. The plaintiffs' obligation was not discharged by merely putting the sugars on the Gladiolus within the thirty days, unaccompanied by any effort on their part to have the vessel start on her voyage within that time. The bill of lading which the plaintiffs received from the charterer fixed no time within which the vessel should sail. It appears, therefore, that the plaintiffs' claim rests solely upon the assertion that they discharged the duties imposed upon them by the contract by merely placing the merchandise on board of the vessel without any expectation that the vessel would sail within the prescribed time. Had the sugars been put on board the Gladiolus under an agreement between the plaintiffs and the charterer that the vessel should start forthwith on her voyage, or under such circumstances as that the inference could properly be drawn that such was the purpose and expectation of the plaintiffs, the question before us possibly would be somewhat different, but under the established facts, the plaintiffs are in the attitude of claiming the fulfillment of their contract to ship by merely transferring from land to the vessel at the dock the sugars in question, knowing well that the vessel would not start on her way until after the expiration of the thirty days.

In the case of *Tobias* v. *Lissberger* (105 N. Y., 404), the contract was for prompt shipment of iron by sail from Europe, and for delivery on dock at the port of New York. On February third the iron was loaded on the vessel, but the harbor being closed by ice the vessel was not able to sail until the third day of the following April. The court, rejecting mere dictionary definitions of the word " shipment," among other things said : " In all the cases referred to by the respondents, the obligation to ship at or within a certain period was held to be unperformed unless the ship might also sail at or within the time stated. Nothing else would be beneficial to the purchaser. The evident object of expressing the time of shipment as declared in those cases, was to provide that the article purchased should come forward at such time as would in the opinion of the purchaser make the venture profitable, or as to time of arrival or payment suit his convenience." And the court there held, that the defendant was entitled to such timely delivery as would follow an effective shipment, and that the shipment meant the beginning of the voyage.

Much stress has been placed by the respondents' counsel upon the case of *Bowes* v. *Shand* (L. R., 2 App. Cas., 455). But that case involves only the meaning of the word "shipment" as applied to a contract of putting on board only, and was fully considered by the Court of Appeals in the case cited. The court was not called upon in that instance to consider whether the word had the meaning which is claimed for it in this action.

It follows that the judgment appealed from should be reversed and a new trial granted, with costs to the appellants to abide the event.

VAN BRUNT, P. J., and BARTLETT, J., concurred

Judgment reversed, new trial granted, costs to appellant to abide event.