CHRISTIAN TOBIAS et al., Respondents, *v* LAZARUS LISSBERGER, Appellant.

On February 2, 1881, the parties entered into a contract, by which plaintiffs sold to defendant about 100 tons old iron " for prompt shipment by sail from Europe and for delivery on dock at the port of New York (dangers of the sea excepted)," the purchase-price to be paid after delivery. On February third, iron answering the description of that contracted for was shipped on board a sailing vessel lying at a port in a river in Germany, about forty miles from the sea. The river was at that time frozen over. it remained closed to navigation until about April third, on which day the vessel sailed, and after a voyage of ordinary length, arrived in New York. On June fourteenth plaintiffs tendered the iron to defendant, who refused to accept. In an action on the contract it appeared that iron of the kind specified could have been obtained at any time at other European ports. *Held,* that the condition of prompt shipment was a precedent to delivery, and so related to the

actual commencement of the voyage, *i. e.*, defendant was entitled to such timely delivery as would follow an effective shipment· that the known unnavigable condition of the river furnished no excuse for the delay; and that, therefore, defendant was not bound to receive the iron.

Also, *held*, that the confinement in port was not included in the exception of "dangers of the sea."

*Fisher* v *Minot* (10 Gray, 260); *Newhall* v. *Vargas* (13 Me. 93, 105), distinguished.

(Argued March 23, 1887; decided April 19, 1887 )

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made at the October Term, 1884, which affirmed a judgment in favor of plaintiffs entered upon a verdict directed by the court, and affirmed an order denying a motion for a new trial.

The nature of the action and the material facts are stated in the opinion.

*William H. Page, Jr.*, for appellant.   A fair interpretation imports that the goods should be gotten promptly without the port of shipment, and that they should become *extra European* before the obligation of promptness could be dispensed with. (*Snyder* v. *Ins. Co.*, 95 N. Y. 196; *De Longuemere* v. *Ins. Co.*, 10 Johns. 125; *Mey* v. *Ins. Co.*, 3 Brev. 329; *Bonney* v. *Morrill*, 52 Me. 252, 256; *U. S.* v. *La Coste*, 2 Mason, 130; *Pettegrew* v. *Pringle*, 3 B. & A. 514.)   In construing the contract the court should consider the manner in which such business is usually conducted, and the known contingencies attendant upon operations of this character.   (*R. R. Co.* v. *Bowns*, 58 N. Y. 581; *Lowber* v. *Bangs*, 2 Wall. 728, 737.) The construction, if doubtful, should be against the plaintiff. ( *White* v. *Hoyt*, 73 N. Y. 511; *Pope* v. *Porter*, 102 id. 366, 369; *Filley* v. *Pope*, 115 U. S. 213, 220.)   The failure to perform a condition precedent is a bar to a recovery.   (*Pope* v. *Porter*, 102 N. Y. 366; *Filley* v. *Pope*, 115 U. S. 213; *Hill* v. *Blake*, 97 N. Y. 216, 220; *Bowes* v. *Shand*, L. R. 2 App. C. 455.)   Even if the plaintiffs were not bound to select a port whence the ship could have sailed as soon as the goods were loaded, still they were bound to select a port whence the vessel

could sail in a reasonable time, and this they failed to do. (*Hill* v. *Blake*, 97 N. Y. 216; *Bowes* v. *Shand*, 2 App. C. 455; *Norrington* v. *Wright*, 115 U. S. 188, 203.) The defendant had waived no right to repudiate the goods when they were tendered. (*Pope* v. *Porter*, 102 N. Y. 366; *Hill* v. *Blake*, 97 id. 216, 222; *Ripley* v. *Ins. Co.*, 30 id. 136; *People's Bk.* v. *Mitchel*, 73 id. 406, 413; *Smith* v. *Brown*, 17 Barr. 431, 434.) The severity of the winter which caused an unusual continuance of the ice-locked condition of the port of Stettin, and prevented the ship and goods from leaving, is no defense to the plaintiffs' failure to perform. (*Kemp* v. *Ice Co.*, 69 N. Y. 69; *Booth* v. *Mill Co.*, 60 id. 60; *R. R. Co.* v. *Bowns*, 58 id. 573; *Reed* v. *Spaulding*, 30 id. 630; *Elliott* v. *Russell*, 10 Johns. 1; *Nugent* v. *Smith*, L. R. 1 C. P. Div. 19.) The plaintiffs having by express stipulation engaged to act promptly would be bound, even with the occurence in question conceded to be an act of God. (*Wheeler* v. *Ins. Co.*, 82 N. Y. 543, 551; *Dexter* v. *Norton*, 47 id. 62; *Tompkins* v. *Dudley*, 25 id. 275; *Harmony* v. *Bingham*, 12 id. 99.) The "dangers of the seas" provided for in the contract do not protect the plaintiffs against the consequences of the event in question, since they can only attach when a ship has weighed anchor with intention of sailing. (*Pettigrew* v. *Pringle*, 3 B. & A. 514; *Snyder* v. *Ins. Co.*, 95 N. Y. 196.) The evidence of custom should have been admitted. (*King* v. *Gallun*, 109 U. S. 99; *Oppenheim* v. *Wolf*, 3 Sandf. Ch. 571; Cyc. Brit. [9th ed.] 295; *Fuller* v. *Robinson*, 86 id. 306, 309; *Johnson* v. *De Peyster*, 50 id. 666; *Walls* v. *Bailey*, 49 id. 464; *Dana* v. *Fiedler*, 12 id. 40; *Vail* v. *Rice*, 5 id. 155; *Hinton* v. *Locke*, 5 Hill, 437; *Livingston* v. *Ten Broeck*, 16 Johns. 14; *Pope* v. *Porter*, 102 N. Y. 366, 369; *R. R. Co.* v. *Stand. Oil Co.*, 87 id. 486, 492; *Bradley* v. *Wheeler*, 44 id. 495, 503.)

*Joseph A. Shoudy* for respondents. Shipment is complete from the moment the goods are placed in the control of the carrier, and the bill of lading given, although the place of the delivery may be somewhat distant from the ship. (*The*

*Idaho*, 11 Blatchf. 222; 3 Otto, 581; Foard on Ship. 508, note; *Pollard* v. *Vinton*, 105 U. S. 7; 1 Pars. Mar. L. 132, note 1.) The responsibility of the plaintiffs ceased as soon as the goods were shipped. The vessel thereafter became responsible for any delay which was not excusable. (Foard on Ship. 508, note.) The delay in sailing was not occasioned by any fault of the vessel, but arose from an act of God which did not render ineffectual the performance of the terms of the contract by the plaintiffs. (*Harmony* v. *Bingham*, 12 N. Y. 99, 100; *Worth* v. *Edmonds*, 52 Barb. 40; 14 Wend. 215; 9 Wall. 455.) The court properly excluded defendant's offers of evidence to prove the existence of a custom excepting Baltic ports under contracts for shipments from Europe. (*Simmons* v. *Law*, 8 Bos. 213; S. C. 3 Keyes, 219; *Wadsworth* v. *Allcott*, 6 N. Y. 72; *Westcott* v. *Thompson*, 18 id. 367; *Bradley* v. *Wheeler*, 44 id. 495; *Colgate* v. *Penn*, 18 W. Dig. 333.) His silence when notified of the sailing of the vessel was acquiescence in the shipment, as in performance of the contract. It was equivalent to an express acceptance of the rails as shipped under the contract. (*Martin* v. *G. M. R. R. Co.*, 16 C. B. 179; *McNevin* v. *Livingston*, 17 Johns. 437; *Cont. Nat. Bk. of Comm.* 50 N. Y. 575, 582; *Blair* v. *Wait*, 69 id. 113, 116.)

Danforth, J. This action is for not accepting certain goods according to a contract made through brokers in these words:

"New York, *Feb.* 2*d*, 1881.

"Sold to Mr. L. Lissberger, New York. For account Messrs. C. Tobias & Co., New York.

"About one hundred (100) tons old iron vignol rails, for prompt shipment by sail from Europe, and for delivery on dock at the port of New York (dangers of the sea excepted), at twenty-eight (28) dollars per ton of 2,240 lbs. weight, as per United States weighmaster's return. Terms of settlement as follows: Eighty (80) per cent cash, payable when rails are

landed on dock, and balance payable on receipt of United States weigher's certificate.

"MANN & JONES,

"Accepted,                                                                    "*Brokers.*

"L. LISSBERGER."

The complaint, after setting out the agreement, alleges "that the plaintiffs promptly shipped by sail from Europe a lot of about one hundred tons of such rails and duly performed all the conditions of the contract on their part, and on the 14th of June, 1881, were ready and willing to deliver, and duly tendered" the rails to the defendant, who refused to accept or pay for them; that upon notice to defendant they sold the rails on his account, and after applying the proceeds there remained due $345.15, for which, with interest from June 14, 1881, they ask judgment. The defendant by answer expressly admits the contract, and that on the fourteenth of June the plaintiffs were willing to deliver, and then tendered to him, the rails mentioned in the complaint. a refusal on his part to accept, and that the plaintiffs after notice sold the same; he denies, however, the other allegations in the complaint, and particularly denies that the goods were promptly shipped from Europe, and says that, on the contrary, there was a delay of two months or thereabouts in such shipment, in consequence of which the goods were of less value in the market than they would have been if promptly shipped; that in this omission the plaintiffs failed to perform the contract on their part, and he, therefore, refused to accept the rails."

Upon the trial of these issues the plaintiffs read the deposition of the captain of the ship "Brunn," to the effect that his vessel, then lying at Stettin, in Germany, was chartered on the 1st of January, 1881, for different kinds of goods for New York. Stettin was about forty miles from the sea, situated upon a river. That on the 3d of February, 1881, he received on board from the shippers, Ignatz Rosenthals, Wie & Company, 535 pieces of old rails, deliverable in New York, on

payment of freight.    The bill of lading then given by him, dated February 3, 1881, and produced by the plaintiffs, is to the same effect, and purports to be indorsed in blank, "Ignatz Rosenthals, Wie & Co."    It also appeared from the captain's testimony that when these rails were shipped the river was frozen fast, the ice being two or three feet thick. It was then expected the ice would break up in March.    But the river, which had become closed to navigation about the twentieth of January, remained so until the second or third of April, on which last-named day the vessel sailed and after a voyage of the ordinary length arrived at New York.    Usually the ice had broken up at Settin late in February or early in March, but the winter of 1881 was of extraordinary severity. It was shown in evidence that rails of the kind described in the contract could have been obtained at any time in other European ports, where detention by ice was unknown — ports even in Germany as well as in France and England, and among others, London and Liverpool.    They seem to have been common in the markets and to be easily procured.

It is stated by the respondent that the only question litigated at the trial was whether the goods were promptly shipped according to the terms of the contract, and the record sustains that view.    The trial judge, against the exception of the defendant, directed a verdict for the plaintiffs.    Upon denying a new trial, he was of opinion that "prompt shipment," under the words of the contract, was within the shipment proven, saying also that "if the defendant wished to provide against a distant port in Europe, or any other delaying cause, it was in his power to make it part of the contract," and failing to do this, says: "I think the point he makes cannot be sustained."    But he added: "I do not put the decision of the case on the grounds above stated, but upon the ground that after the contract, *after notice of shipment*, the defendant waited until after the arrival here before making the objection now made."    The General Term discusses only the ground first stated by the trial judge, and by a divided court sustained his decision.

The minds of the parties met when the sold note was communicated to and accepted by the defendant. It is the only evidence of the contract, and upon its proper construction the rights of the plaintiffs depend. Their action is upon the theory that the contract imposed upon them the obligations of bringing the goods to New York, and there having them ready for delivery. They were, therefore, to furnish the rails either by selection from their own stock, or by purchase or other means, but, however obtained, the rails were to be got from Europe by sailing vessel at the expense and at the risk of the vendors. They were to ship the rails in such vessel as they chose, on such terms as they and the master could agree upon; they were to land them on the dock in New York, and at that moment only did any duty attach to the defendant, who was then to pay a certain proportion of the price. The vendors were to procure the weighmaster's return, and on its receipt the balance became due.

The plaintiffs then have sold a quantity of iron, and the question arises as to how the condition shall be performed which will enable them to make delivery and entitle them to demand payment from the vendee. No time is specified, and if there was nothing else in the contract, it would undoubtedly be the duty of the vendors to make delivery of the thing sold within a reasonable time and to determine whether the plaintiff had been able to do so, the facts and circumstances attending the transaction would have to be considered. But although the contract specifies neither month nor day, nor duration of time within which or on which they must perform, it does specify the manner of doing the act which makes performance possible. The contract provides for "prompt shipment," and it is this condition on which all other stipulations hang. So the plaintiffs understood it, and, as we have seen, they alleged as a condition precedent to the right of action that they "promptly shipped" the iron. This implies expedition, admits of less delay than would be permitted under a covenant to act merely within a reasonable time, and in effect the plaintiffs interpret it as

meaning "directly" or "at once." Such, indeed, was their conduct. The contract was made in New York on the 2d of February, 1881, and the plaintiffs rely upon a bill of lading showing that on the very next day, at Stettin, iron rails, answering in description to those named in the contract, were put on board a vessel chartered for New York. Therefore the respondent's contention is that the whole condition is satisfied, and "if any delay thereafter occurred to the prejudice of the defendant, he must look to the ship for his indemnity." The last position fails when we see that no privity existed between the defendant and the vessel or its master, and that his only contract relation was with the plaintiffs. The sole object of prompt shipment was to secure a speedy arrival for delivery in New York. Until then the goods were at plaintiffs' risk, and only then could the defendant's liability attach. Before that event happened there was to be neither transfer of title nor transfer of possession. It is quite unimportant to inquire how it might be as between the master of the vessel and the plaintiffs, or the shipper, one of whom may be assumed to be the owner, and the other, by virtue at least of the bill of lading, entitled to possession. In the case before us it is more reasonable to construe the condition of prompt shipment as a precedent to delivery, and so relating to the actual commencement of the voyage that the known unnavigable condition of the river could furnish no excuse for the delay. The defendant was entitled to such timely delivery as would follow an effective shipment; in other words, to an exact performance by the plaintiffs of their contract to ship and deliver, not two things separable in their nature, but two steps to a single end. That involves not only a purpose to transport, but an expectation that transportation would commence, if not at once, certainly within a reasonable time. Shipment cannot be said to have been made from Europe, when the port selected had no passage-way or outlet. Nor can it be fairly argued even that the iron was shipped "for delivery in New York," if it was apparent to the shipper that the vessel

could not leave the docks where it took in freight. Something more than shipment was bargained for, viz., prompt shipment, and the delivery was to be within such time as, dangers of the sea only excepted, might reasonably follow. Nothing less could have been in the minds of the parties than expedition, or immediate and effective, or beneficial shipment as a step towards delivery. Payment was postponed to delivery, both to be made in New York. The sale was for shipment from Europe, altogether at the vendors' expense and risk, and no exception was provided for save " dangers of the sea," among which a certain and safe confinement in port is not included.

In *Duncan* v. *Topham* (8 Com. B. 225), the order was for certain goods to be put on board directly. The complaint alleged an order for goods to be delivered within a reasonable time, and the plaintiff failed in his action because the proof did not support the declaration, it being held that " a reasonable time " was a more protracted delay than " directly." The contract here goes further. ' " Prompt " is synonomous with " quick," " sudden," " precipitate." Indeed, one who is ready is said to be prepared at the moment, one who is prompt is said to be prepared beforehand. Such represents the condition of the plaintiffs. Their immediate loading of the vessel shows that they were prepared beforehand, but if their construction of the contract is correct, the qualifying word might as well be one of postponement and delay. The fault was with the plaintiffs. It was optional with them to ship from any port in Europe. If at the time of shipment the plaintiffs or their agents knew or might have known that detention and delay at the place of shipment and before ground could be broken for the voyage, were unavoidable and to be expected, they must also have known that the delivery could not be made as contracted for, and the subsequent tender was too late. It was not a " prompt shipment," and the defendant was not bound to receive the cargo.

It is now contended, however, by the plaintiffs that the appellant is estopped from denying that the rails were shipped

in accordance with the terms of the contract. This might, under some circumstances, furnish a question for the jury. It cannot be said, as matter of law, that those now relied on have that effect. It appears that the usual length of a voyage from Stettin to New York is forty-nine days. On the first of March the defendant was notified by the plaintiffs that the 100 tons of rails sold to him "are shipped　*　*　*　from Stettin," but the date of sailing was not given, and in answer to defendant's inquiry concerning it, the plaintiffs replied they were not informed. On the nineteenth of March they told him the bill of lading was dated February third, but that they had "no date of the vessel's sailing." On the fourth of May they wrote: "According to New York Maritime Register, the Ger. Bk. 'Ferdinand Brunn,' with 100 tons rails sold to you, sailed from Stettin April sixth for New York." The vessel arrived at New York, and on the fourteenth of June, when tendered by the plaintiffs, the defendant in writing refused to receive them, saying the rails were not shipped according to contract.

We find nothing in these letters which would authorize a court to say that the defendant had waived performance by the plaintiffs. There is no evidence that he knew the circumstances attending or causing the delay, none that he was informed that the vessel, when loaded, was ice-bound, nor of its detention from that cause. Moreover, the sole act relied upon in the complaint as a breach of the contract on defendant's part, a refusal to accept the rails tendered, took place, as is there alleged, and is admitted in the answer on the fourteenth of June. Then the plaintiffs say they were ready and willing to deliver, and duly tendered the goods, and the defendant refused to receive them. If I am right in my view of the contract he was under no obligation to do so.

I have not overlooked the argument of the plaintiffs, by which our attention is directed to the difference between "shipment" and "sailing," nor failed to examine the definitions and decisions upon which the argument is founded.

The context of the cases cited, however, prevents the applica-
tion of the decisions to the one before us; and while the
terms are, no doubt, well defined, there is no definition nor
adjudged case which implies that an agreement to deliver
goods after prompt shipment is satisfied by merely placing
them on board a vessel, which, although it should weigh
anchor or cast off moorings, and make other preparations to
depart, could not for a considerable period of time — in
this case exceeding the customary length of the intended
voyage — leave the spot where the cargo was received. Such
a shipment would be colorable and deceptive. If it answered
the letter of the contract, it defeated its purpose. It would
not, in fact, be the inception of the voyage, and the burden
of showing a *bona fide* shipment would not be sustained. In
all the cases referred to by the respondents, the obligation to
ship at or within a certain period was held to be unper-
formed, unless the ship might also sail at or within the time
stated. Nothing else would be beneficial to the purchaser.
The evident object of expressing the time of shipment, as
declared in those cases, was to provide that the article pur-
chased should come forward at such time as would, in the
opinion of the purchaser, make the venture profitable, or as
to time of arrival, or payment, suit his convenience. (*Bowes*
v. *Shand*, 2 Appeal Cas. [L. R.] 455 ; *Alexander* v. *Vanderzee*,
7 C. P. [L. R.] 530.)

Another class of cases, also cited by the respondents, shows
that when goods are sold and are to be delivered on board of
vessels, either provided by the purchaser or by his appoint-
ment, putting on board is a good shipment, whether the vessel
is in condition or is expected to sail or not. (*Fisher* v.
*Minot*, 10 Gray, 260; *Newhall* v. *Vargas*, 13 Me. 93, 105.) The
principle on which these cases were decided is not involved
here, and the others do not lessen the strength of the appel-
lant's case.

The time and manner and place of shipment might, indeed,
have been accepted by the defendant as in compliance with
the contract, and whether it was or not, and whether with full

knowledge of the facts there was on his part a waiver of the strict performance of the condition on the plaintiffs' part, were questions for the jury. The trial court, therefore, erred in directing a verdict for the plaintiffs.

It follows that the judgment should be reversed, and a new trial ordered, with costs to abide the event.

All concur, except RUGER, Ch. J., dissenting.

Judgment reversed.