DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

DURING THE YEARS 1909 AND 1910.

---

Mound City Distilling Company, Defendant in Error, v. Consolidated Adjustment Company, Plaintiff in Error.

## Gen. No. 14,695.

1. CONTRACTS—*when right of rescission waived*. Failure promptly to exercise the right of rescission operates as a waiver of such right.

2. CONTRACTS—*failure to perform treated as rescission*. If one has undertaken to perform an act and has been paid the consideration and then refuses or fails, the promisee may treat the refusal or a degree of neglect equivalent to a refusal as a rescission and recover back the price paid.

3. DEFINITIONS—*"promptly."* A special agreement to prosecute a claim "promptly" means that there shall be less than the ordinary and reasonable delay in the prosecution, that is, that there shall be more than ordinary diligence and dispatch.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. MCKENZIE CLELAND, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed. Opinion filed December 21, 1909.

DELAVAN B. COLE, for plaintiff in error.

WOLFNER, HEALY & YOUNG, for defendant in error.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

The Mound City Distilling Company, plaintiff below, recovered a judgment for $354.19 against the Con-

156    APPELLATE COURTS OF ILLINOIS.

Mound City Dis. Co. v. Consolidated Adjust. Co., 152 Ill. App. 155.

solidated Adjustment Company, defendant below, and the Adjustment Company prosecutes this writ of error to reverse that judgment.

The Adjustment Company, a collection agency, agreed to give its services to the Distilling Company for a fixed period of three years continuously and, contingently, to give its services thereafter until a certain mentioned sum should be recovered according to the provisions of the contract. The Distilling Company paid the Adjustment Company for the services to be rendered $354.19, cash in advance, which sum this suit was brought to recover, and a written contract was entered into between the parties, dated April 29, 1903. That contract, so far as now material, is as follows:

"This certifies that Mound City Distilling Company of St. Louis, Mo., paid the Consolidated Adjustment Co. $354.19 for a three year service from this date, with all benefits and privileges of its business system in its various departments, and the Consolidated Adjustment Co. agrees to promptly and faithfully prosecute any and all claims listed with it for adjustment under terms of this contract.

GUARANTEE.

This Company agrees to recover in cash or secured net settlement from the claims of the above client at least $798.37 within and under the terms of the above contract; or to refund the full initial fee paid, reserving the right to cancel the contract, refund the initial fee and surrender the claims of the above client, at any time after six months from this date; or to continue such service beyond the term first in this instrument mentioned, and until said last mentioned sum shall have been so recovered, without additional cost to the above client, except commissions on adjustments effected, on said claims or any additional claims in favor of said client, which may be forwarded. * * * * * *
Judgm'ts. .....Bonds.....Claims in
Acc'ts.      .....Notes .....Controversy
Total $....

Mound City Dis. Co. v. Consolidated Adjust. Co., 152 Ill. App. 155.

Lost Debtor      Bankrupt and
Claims .......... Outlawed Claims
...... Total $....
    (No guarantee issued on this class of claims.)
                    Cost of Contract,       $354.19.
                    Claims forwarded,    $5,648.55.
                    Am't Contracted for,  $5,648.55.
                    Service Credit on, $............
Guarantees exceeding 50 per cent. issued only to Executors, Administrators, Receivers and Assignees.

Guarantees on Bank, Corporation, Manufacturing and Wholesale Lines, 10 to 30 per cent.

Guarantees on Newspaper and Publication lines, 10 to 40 per cent.

Guarantees on all Retail Merchants' lines, 5 to 33⅓ per cent.

Guarantees on Professional and Personal Service lines, 20 to 50 per cent.

Received of Mound City Distilling Co. ($354.19) Three hundred and fifty-four 19/100 Dollars as payment in full on a three year $5,648.55 contract and guarantee from April 29th, 1903, to April 29th, 1906.

                        CONSOLIDATED ADJUSTMENT CO.
                        By Danl. G. Alexander.
Dated April 29th, 1903.''

On or about the date of the contract the Distilling Company gave the Adjustment Company a memorandum of claims against Altmayer & Flateau, of Macon, Georgia, aggregating $5,648.55, for collection. The claims consisted of some eighteen acceptances for various amounts and bearing various dates, prior to September 4, 1906, and were payable in from thirty days to four months from their dates, respectively. The evidence shows that, under the laws of Georgia, where it is reasonable to assume they were accepted by Altmayer & Flateau, these acceptances were all outlawed before the Adjustment Company was engaged to collect them. Nothing was ever realized upon these claims. No other claims were placed with defendant for collection so far as the record discloses.

The option given by the contract to the defendant, to continue its service beyond the fixed period of three

years, could undoubtedly be exercised by defendant without any notice to the plaintiff, to take advantage thereof.

Lost debtor claims and also bankrupt and outlawed claims are, by the express language of the contract "(No guarantee issued on this class of claims)" excluded from such guaranty to the plaintiff as the contract contains. As the claims here involved were outlawed when given to defendant, there can be no recovery under the guaranty clause in the contract.

The doctrine of rescission is advanced by plaintiff as a ground upon which recovery may be had; because, it is contended, defendant totally failed to perform the services it agreed to perform by the contract. We do not regard Lord v. Board of Trade, 163 Ill. 45, as in point to the effect that money paid one, under a contract, to perform services may be recovered on the theory of rescission, where he fails to perform any services, because in that case a recovery was sustained on the ground that the contract provided for recovery in the event of failure to do the things agreed to be done. Yet it is the law that "If one, having received money in payment of his undertaking to perform an act, refuse to perform it, the other party has the right to treat such refusal, or any degree of neglect that shall be equivalent to a refusal, as a rescission of the contract, and bring his action to recover back the price he has paid." King v. Hutchins, 28 N. H. 561, 574; Williston's Wald's Pollock on Contracts, 334, 341-2. There are, however, difficulties which prevent a recovery by this plaintiff on the theory of a rescission. There is some question whether the degree of neglect on the part of defendant was such as to authorize plaintiff to regard it that defendant had abandoned the performance of the contract. Plaintiff allowed the matter of rescinding to rest and took no steps in that direction until this suit was started, January 6, 1908—certainly not prior to December 12, 1907. A letter seems to have been sent by plaintiff to defendant on that date, wherein it was claimed the contract had ex-

pired or lapsed. By the plaintiff thus allowing the matter to rest for a long time a question has arisen whether plaintiff has not waived the right to rescind on account of defendant's negligence. Defendant contracted to prosecute plaintiff's claims "promptly." Defendant undertook thereby to prosecute these claims without delay. This meant that defendant agreed there should be less than the ordinary and reasonable delay in the prosecution of these claims; that is, the diligence and dispatch should be more than ordinary. The meaning of "promptly" has been judicially defined. See Metropolitan Land Co. v. Manning, 98 Mo. App. 248; Denver v. Moewes, 95 Col. App. 28, 60 Pac. 986; McKnight v. Whipple, 25 Col. 469. Thus, while by adverting to the contract defendant's negligence is made clear, plaintiff's delay in exercising the right of rescission, if it at any time accrued, is, at the same time, made clearer.

The rule is that one who has a right to rescind must act with reasonable promptness in rescinding, otherwise he will have waived his right to rescind. Williston's Wald's Pollock on Contracts, 345-6. At the time of starting this suit plaintiff undoubtedly had these difficulties in mind.

The cause of action in this case, as appears by the bill of particulars, is for money due from defendant *under* the contract. Thereby plaintiff asserts the existence of the contract and claims upon the contract and, consequently, cannot recover in this suit on the theory that the contract had been rescinded and did not exist when the suit was begun. It must not be overlooked that in a suit based on rescission "The plaintiff does not sue on the contracts, but on a promise of the defendant implied by law to refund to him, the plaintiff, money which he paid to the defendant by virtue of contracts which have been rescinded and abandoned by mutual consent, and which the defendant in equity and good conscience should not retain. He sues as if the contract had never existed." Vider v. Ferguson, 88 Ill. App. 136, 150.

But one other theory of recovery is contended for, namely, a breach by the defendant of the contract to promptly and faithfully prosecute any and all claims listed with it. There is not much doubt, upon this record, but what defendant failed to prosecute these claims "promptly and faithfully" or even with ordinary diligence. But then the questions become pertinent: What is the measure of damage for such breach? and What damage has been proven in that respect? Surely no one will contend the measure of damage in such case is the amount paid defendant by plaintiff for services to be rendered in the prosecution of the claims. The damage is what plaintiff lost by the breach and that depends entirely upon what defendant could have accomplished by promptness and faithfulness. The claims against Altmayer & Flateau being outlawed when they reached defendant and there being, consequently, no legal obligation on the part of Altmayer & Flateau to pay, there was probably no damage sustained by plaintiff by defendant's breach of the contract. Certainly the evidence in this record establishes no damage. The judgment of the Municipal Court must be reversed and the case will not be remanded.

*Reversed.*