BOSTON LUMBER COMPANY *vs.* PENDLETON BROTHERS, INC.

Second Judicial District, Norwich, April Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

Upon an issue of fact as to whether the plaintiff enclosed a duplicate "sales slip" in its letter acknowledging the defendant's order for a quantity of lumber, the trial court's finding that it was sent was warranted by evidence that it was made out in the plaintiff's office and that it was the invariable practice of that office to send duplicates to all customers, although defendant's treasurer denied that he had ever seen it or that it could be found in his files.

The negotiations between the parties, having commenced with telephone conversations in which prices and quantities were agreed upon, continued with a letter of confirmation from the defendant in which a new element concerning the planing of the lumber was introduced. This was followed by plaintiff's letter ac-

Boston Lumber Co. *v.* Pendleton Brothers, Inc.

knowledging the order and containing the "sales slip" in which were embodied the terms of the contract as the plaintiff then understood and intended them to be. Thereafter the defendant sent shipping instructions and actual performance of the contract commenced. *Held* that these facts not only justified but required the conclusion of law reached by the trial court, that the contents of the "sales slip" were incorporated in the contract, since the minds of the parties had never met upon all the details of their agreement until the "sales slip" was sent and its terms impliedly accepted by defendant in its shipping directions.

At the foot of the "sales slip" below the plaintiff's signature appeared a printed statement to the effect that all agreements were contingent upon fires, strikes, delays of carriers, and other unavoidable causes. *Held* that the trial court properly ruled that this became a term of the contract, since it was so plainly and boldly printed and so apt and usual as to fairly manifest an intent upon the part of the plaintiff that it should be obligatory upon the defendant—the only test for determining whether formal provisions of this nature, printed upon letter-heads or contract-forms, are to be read into an accompanying agreement.

Whether shipments under a contract accord with a provision that they be "prompt" or "rush" depends upon the surrounding circumstances including, as in the present case, the existence of railroad embargoes and the difficulty of procuring suitable cars.

In an action to recover damages for the refusal of the defendant to accept the final instalment of lumber, the defense that this portion of the contract had been mutually rescinded could not be raised by the defendant because not specially pleaded.

Mutual rescission is in itself a contract and must be supported by consideration; therefore, the plaintiff's statement to the defendant that "we will cancel the balance of the order" was merely an offer to rescind and was of no avail to the defendant which did not accept the offer but chose rather to rely upon its claimed privilege to reject the lumber because of delays in delivery.

Subsequent to the written order, the defendant orally contracted to purchase an additional quantity of lumber from the plaintiff. *Held* that the receipt and acceptance by the defendant of a substantial portion of this lumber under circumstances charging it with full knowledge that it was being delivered under the oral and not the written contract, were sufficient to satisfy the requirements of the statute of frauds.

Argued April 28th—decided June 30th, 1925.

ACTION to recover damages for an alleged breach by the defendant of its contract to purchase a quantity

of lumber, brought to the Superior Court in New London County and tried to the court, *Wolfe, J.;* judgment for plaintiff for $4,717, and appeal by defendant. *No error.*

*Herbert W. Rathbun* and *Henry Harris,* for the appellant (defendant).

*Lawrence A. Howard,* with whom, on the brief, was *William F. Mooers,* for the appellee (plaintiff).

MALTBIE, J. The defendant purchased of the plaintiff in November or December, 1919, ninety thousand feet of lumber, and a little later, an additional forty-five thousand feet, this lumber consisting of timbers required to average sixty feet in length, and in its other dimensions to measure, some, six inches by sixteen, some, six inches by fourteen, some, twelve inches by twenty, and some, six inches by twelve. Three shipments, consisting in all of about eighty-seven thousand feet, were received and paid for by the defendant. Two other shipments were refused by the defendant when they arrived at its yards, on the ground that delivery was not made within the time required by the contract of purchase. The first issue arising upon the record is concerned with the terms of the contract.

The transaction originated in an inquiry by the defendant as to a possible purchase and a reply by the plaintiff quoting prices. The defendant accepted the plaintiff's offer by telephone, and then wrote a letter in confirmation in which, however, it added a requirement that certain of the timbers be planed, and stated that "We desire the 6 x 14 and 6 x 16 for prompt shipment and trust you can get one or two carloads started, as the only reason we are buying it is to get it quickly, otherwise, we would have to cut it out of some ma-

terials we have at Mystic." The plaintiff replied that it had the order and had forwarded it to the mill asking that the timbers be planed as required, and stated that the plaintiff was not sure that the work would be done without charge, but would advise the defendant if any charge was to be made. The trial court finds that there was enclosed in the envelope with this reply a "sales slip" stating the terms of the sale. As the defendant points out, the only positive testimony to the effect that it was sent, that of the president of the plaintiff, seems to have been based rather upon the customary usage of his company to take that course, than upon personal knowledge; yet we cannot find error in the conclusion of the trial court; the "sales slip" was indubitatively made and, that being so, the custom of the office to send a duplicate to the customer was some evidence that one was sent in this case; *Moffitt* v. *Connecticut Co.,* 86 Conn. 527, 86 Atl. 16; *State* v. *Williams,* 90 Conn. 126, 130, 96 Atl. 370; and this the trial court might hold sufficient to prevail over the testimony of the defendant's treasurer that he had never seen such a "sales slip" and that none could be found in the files of the company.

The "sales slip" gave the name and address of the defendant as purchaser, and in answer to the query "Ship to," it stated, "Destination later," and to the following, "When," it stated, "Rush"; and it stated the details as to amount, sizes and kinds of lumber, with indications as to the requirement of the defendant that it be planed, and was signed with the name of the plaintiff. In addition, it had printed upon it, in small but bold-face type, two collateral provisions, one of which, at the foot of the slip and below plaintiff's signature, was as follows: "All agreements contingent upon fires, strikes, delays of carriers, and other delays unavoidable or beyond our control." Shortly after

the sending of the letter containing the "sales slip," the plaintiff sent a telegram inquiring as to the destination to which the lumber was to be shipped, and the defendant replied, directing shipment to Mystic, Connecticut.

The conclusion of the trial court was that this "sales slip" was incorporated in and became a part of the contract of purchase, so that its terms and conditions were binding upon the parties. The defendant contends, however, that there had been an offer and acceptance sufficient to constitute a complete contract before the letter containing the "sales slip" was ever sent and so it could not affect the rights of the parties as they had already become fixed. The soundness of this contention must be determined upon the basis of the writings passing between the parties and the intent manifested by them, so that there is no occasion to consider the oral testimony indicating the understanding of the situation in the mind of the plaintiff's president, quoted in defendant's brief; the question is one of law, not of fact. *Lindsay* v. *Phillips,* 95 Conn. 96, 100, 111 Atl. 176; *Atlantic Terra Cotta Co.* v. *Chesapeake Terra Cotta Co.,* 96 Conn. 88, 113 Atl. 156. We must hold that the conclusion of the trial court was correct. The defendant's letter confirming its acceptance of the plaintiff's offer to sell at certain prices imported two new elements into the situation, the requirement that a part of the lumber be planed, and a request for its "prompt shipment"; and the importance of the latter element is apparent from the fact that the defense is largely based upon it. The plaintiff's reply in terms merely acknowledged receipt of the order and then addressed itself to the requirement that the lumber be planed, evidently in order to make clear its position as to the possibility of a mill charge for that work; but upon the "sales slip" the plaintiff

set out in their entirety the terms of the bargain as it intended that they should stand. When, with that in its possession, the defendant sent shipping directions for the lumber, it impliedly consented that the purchase would be governed by those terms. Until that acceptance there was no stage in the negotiations when there was not some respect in which the minds of the parties had failed to meet. That "sales slip," coupled with the subsequent shipping directions, finally fixed the rights of the parties. *Poel* v. *Brunswick-Balke-Collender Co.,* 216 N. Y. 310, 318, 110 N. E. 619.

One effect of this was to substitute for the proposed term contained in the defendant's letter requiring "prompt shipment" of certain of the lumber a provision for a "rush" shipment of the whole. As bearing upon the effect of that requirement, it also made it necessary for the trial court to determine whether the provision at the bottom of the "sales slip" exonerating the plaintiff from liability for delays due to the fault of carriers or causes unavoidable or beyond its control, was a term of the contract. Whether or not terms and conditions printed upon letter-heads or contract-forms are to be incorporated into an agreement written upon them, where, on the one hand, there are no references to the marginal provisions, and, on the other, those provisions do not conflict with the written agreement, often is a question not easy of solution. It must, after all, be determined upon the principle that one party can insist only upon such terms as are so set forth and so related to the writing and the subject-matter of the contract as fairly to manifest to the other party an intent that they are to be obligatory upon him; fair dealing to him, upon the assumption that he will act with reasonable caution, must be the test; and largely each case must stand by itself. 1 Williston, Contracts, § 90d. In this instance,

the provision in question is so plainly and boldly printed that it could not well be overlooked by a purchaser and so apt and usual in the situation involved in the purchase that its materiality would be manifest. The trial court committed no error in holding that it was incorporated into the contract of purchase. *Poel* v. *Brunswick-Balke-Collender Co.,* 216 N. Y. 310 323, 110 N. E. 619.

We have, then, a contract which required a "rush" shipment of the lumber, but which absolved the plaintiff from responsibility for any delays of carriers, or such as were unavoidable or beyond its control. The term "rush" was substituted by the plaintiff for the word "prompt" contained in the defendant's letter, and no doubt was intended to carry somewhat the same content. Neither word has, as far as the finding goes, any precise or definite meaning in the connection in which it was used in this instance; both undoubtedly require something more than ordinary diligence, but their significance in a given case can only be determined in view of the terms and subject-matter of the contract and the surrounding circumstances. *Tobias* v. *Lissberger,* 105 N. Y. 404, 410, 12 N. E. 13; *Mound City Dis. Co.* v. *Consolidated Adjust. Co.,* 152 Ill. App. 155, 159; *Brewer* v. *Lepman & Heggie,* 127 Mo. App. 693, 696, 106 S. W. 1107. The trial court concludes that the failure of the plaintiff to ship the lumber more promptly was almost wholly due to various embargoes existing upon the railroads over which the lumber was to be carried, and to the inability of the plaintiff in the exercise of reasonable diligence to secure suitable cars, and that the shipments were made with reasonable promptness in view of existing circumstances. These conclusions we cannot find to be so insupportable in the light of the other facts found as to be erroneous. It follows that the last two ship-

ments, received on July 31st and August 18th, were within the terms of the purchase, and that the defendant had no right to reject them as not complying with the provisions of the contract.

On August 3d, the fourth load of lumber having arrived at its yard, the defendant telegraphed the plaintiff that "owing to the extreme delays on this order," it could not use the lumber and suggested that it be sold to others, and also wrote the plaintiff confirming the telegram. On August 5th, the plaintiff replied to this letter, stating: "You were at liberty to cancel this order any time before shipment. . . . We shall insist that you take in this car and pay whatever demurrage has accrued at your end. We will cancel the balance of the order." The trial court concluded that this letter did not create a cancellation of the contract as far as the shipment which arrived on August 18th is concerned. In so far as this was based upon a finding as to the intent of the parties, we would have difficulty in sustaining it. However, any error committed by the trial court in this respect cannot avail the defendant, for two reasons. First, there is no pleading in the case which would sustain a judgment that any part of the order had been rescinded, and pleading is necessary to raise such an issue. *Urbansky* v. *Kutinsky*, 86 Conn. 22, 29, 84 Atl. 317. Secondly, the defendant did not, in its letter refusing to accept the shipment which arrived on July 31st, ask a rescission or cancellation of the order as regards any subsequent shipment; the suggested cancellation in the plaintiff's letter was then but an offer to rescind; and as the defendant never accepted that offer, but chose rather to stand upon its right to reject the shipment as not within the terms of the contract, no rescission came into being. *Woodbridge Ice Co.* v. *Semon Ice Cream Corporation*, 81 Conn. 479, 483, 71 Atl. 577.

Little further need be said.  The conclusion that the trial court committed no error in holding that the shipments in question came within the terms of the contract makes it unnecessary to consider whether the doctrine of *Remington Arms U. M. C. Co., Inc.* v *Gaynor Mfg. Co.*, 98 Conn. 721, 731, 120 Atl 572, would apply in this case  There can be no question that the defendant received and accepted a very substantial part of the forty-five thousand feet of lumber included in the additional order under circumstances charging it with full knowledge that the timbers were a part of that lot and did not come within the original purchase, and so that that order was taken out of the statute of frauds.  Certain of the requests for corrections in the finding have been dealt with in passing, and the others are either immaterial or not well-founded, and do not merit discussion.

There is no error.

In this opinion the other judges concurred.