[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is seeking money damages for the defendants' alleged breach of a lease for commercial property at 810 North Avenue, Bridgeport, Connecticut. The complaint is dated February 21, 1990. The writ, summons and complaint was incorrectly returned to the Superior Court, Judicial District of Fairfield at Bridgeport at the Judicial District Courthouse at 1061 Main Street, Bridgeport. The correct venue was the CT Page 14667 Superior Court Housing Session, Judicial District of Fairfield, 172 Golden Hill Street, Bridgeport. Connecticut GeneralStatutes § 47a-68(h); Connecticut General Statutes § 51-348(c);Connecticut General Statutes § 47a-70(a). The improper venue was not noticed by the court or the parties until the matter had been tried to an Attorney Trial Referee. The court on its own motion transferred the matter to the Housing Session on July 5, 1994 pursuant to Connecticut General Statutes § 51-347b.
PROCEDURAL HISTORY
In order that the issues can be properly decided, a review of the procedural history of this case and the various motions should be described. The lawsuit was originally filed with a return date of March 20, 1990 with a one page complaint seeking the return of a $2400 security deposit and a $1200 advance rent payment for August 1989. The complaint alleges that the plaintiffs terminated the lease prior to August 1, 1989 and thus are entitled to the return of the $3,600. The file contains multiple pleadings including; Request for Admission, Request to Revise, Motion for Default, Objection to Request to Revise, Request to Amend, Revised and/or Amended Answer, Special Defenses and Counterclaims, Objection to Request to Amend, Motion for Summary Judgment, Motion for Extension of Time, Objections to Motion for Summary Judgment with Supporting Affidavit, Withdrawal of the Original Complaint as to Robert Barone only, Requests for Interrogatories, etc.
The pleadings were closed. The defendants' answer contained a general denial and a special defense alleging that the lease was never terminated and contained no unilateral agreement to terminate. The defendants filed counterclaims suing on the August 1, 1989 lease seeking money damages for the full five years of the lease which was to end on July 31, 1994, that sum being $80,400 plus attorney's fees, costs of reletting and additional rent. The plaintiffs filed a reply which generally denied the special defense and counterclaims. The matter was referred to an Attorney Trial Referee. The matter was tried on September 17, 1992 and the Attorney Trial Referee rendered a report dated January 12, 1993.
Thereafter the defendant filed a Motion to Correct and the ATR submitted a corrected report. The defendant filed an objection as well as an exception to the ATR's report. The court, Vertefeuille, J., on May 18, 1594 rejected the ATR report CT Page 14668 as follows; "The Referee recommended a judgment against the defendant on the counterclaim on the basis that there was a rescission of the lease. The rescission, however, must be specially pleaded. See Boston Lumber Co. v. PendletonBros., Inc., 102 Conn. 626, 633 (1925) which was not raised in the pleadings. The reference to the ATR is revoked and this case is ordered transferred to the Housing Session because it is a Housing matter as defined under Connecticut General Statutes§ 47a-68(h)".
The parties filed no pleadings after its transfer to the Housing Session until the defendants filed a request to amend the counterclaim on August 3, 1995 alleging three counts; 1) breach of lease, 2) false representation by Alice Barone that she was a licensed chiropractor in the State of Connecticut, and 3) failure to pay rent on and after September 1, 1989. On date of trial, August 4, 1995, the court granted the request to amend the counterclaims. Immediately thereafter the plaintiff filed an answer to the counterclaims alleging as a special defense that the lease was rescinded by the parties and/or that the defendants acquiesced to the rescission of the lease because the defendants did not afford notice to the plaintiff that the termination and surrender of the premises was a violation of the lease. The defendants filed a general denial to the special defense.
The parties requested that the court take the matter on the papers and decide the matter based upon exhibits admitted into evidence before the ATR as well as the September 17, 1992 transcript of the trial before the ATR. The parties agreed to the procedure under the authority of Connecticut GeneralStatutes § 51-183f and Holcombe v. Holcombe, 22 Conn. App. 363,365 (1990).
The court conducted a canvas of the attorneys on August 4, 1995 in accordance with the six steps laid out in Stevens v.Hartford Accident and Indemnity Co., 29 Conn. App. 378, 386
(1992).
 "A successor judge should take the following steps pursuant to the authority granted by § 51-183f: (1) become familiar with the entire existing record, including, but not necessarily limited to, transcripts of all testimony and all documentary evidence previously admitted; (2) determine, on the basis of such record and any further CT Page 14669 proceedings as the court deems necessary, whether the matter may be completed without prejudice to the parties; (3) if the court finds that the matter may not be completed without prejudice to the parties it should declare a mistrial, but if the court finds that the matter may be completed without prejudice to the parties then; (4) upon the request of any party, or upon the court's own request, recall any witness whose testimony is material and disputed and who is available to testify without due burden; (5) take any other steps reasonably necessary to complete the proceedings; and (6) render a decision based upon the successor judge's own findings of fact and conclusion of law." Stevens v. Hartford Accident and Indemnity Co., supra 386.
The parties, in open court, stipulated as follows; 1) the matter is submitted to the court based upon the pleadings as amended through August 4, 1995; 2) the September 17, 1992 transcript of 97 pages will be considered by the court in lieu of testimony; 3) all the exhibits currently in the file are all the exhibits submitted to the ATR; 4) the court may consider those exhibits; 5) no further exhibits, documents or witnesses will be offered by either party; 6) if the court finds that the matter may not be completed without prejudice to the parties it has the right to declare a mistrial; 7) no request will be made by the parties to recall any witnesses; 8) no other steps are reasonably necessary to complete the proceedings; 9) the court has the right, upon its review of the file, transcript and exhibits, to call its own witnesses; 10) the parties waive the actual viewing by the court of the demeanor of witnesses who testified; 11) the trial judge will render a decision based upon his own findings of fact and conclusions of law. The parties submitted trial briefs and filed simultaneous post trial memoranda of law.
FACTS
The court has read the September 17, 1992 transcript, the pleadings and record, memoranda of law as well as the exhibits. The court declines to declare a mistrial or call any court witnesses. The court finds the following facts.
No further proceedings are necessary and the matter may be completed without prejudice to the parties. No other steps are reasonably necessary to complete the proceedings. This decision CT Page 14670 is based on this court's own findings of facts and conclusions of law.
On July 8, 1989 plaintiff, Alice Barone, as tenant, and the defendants, Martin B. O'Connell and Paul J. Fleming as landlords, entered into a written lease for premises at 810 North Avenue, first floor, Bridgeport, Connecticut. The lease was for a five year period beginning August 1, 1989 and ending July 31, 1994. The rent was $1200 per month for the first two years, $1400 per month for the next two years, and $1500 per month for the last year payable on the first day of each month. Article SECOND of the lease contained the following clause; "The Tenant covenants and agrees to use the demised premises as a chiropractor's office and agrees not to use or permit the premises to be used for any other purpose without the prior written consent of the Landlord endorsed hereon."
Article TWENTY-EIGHTH of the lease required a security deposit of $2,400 to be paid. At the signing of the lease the plaintiff, Alice Barone, paid the defendants the sum of $2,400 as a security deposit which was accepted by the landlords. At the same time the plaintiff paid the defendants the sum $1200 representing the rent due for the month of August of 1989.
The lease was signed by the plaintiff. Under the signature line was typed "ALCIE BARONE, Tenant". On the signature line the plaintiff signed "Alice J. Barone, D.C.." The phrase D.C. means Doctor of Chiropractic medicine. There is no clause contained in the lease that makes the lease contingent upon the plaintiff obtaining a license in the State of Connecticut to practice chiropractic medicine. There is no provision in the lease which permits the plaintiff to unilaterally cancel or terminate her obligations under the lease. No further payments were made by the plaintiff to the defendants under the terms of the lease.
During July of 1989 the defendants provided the plaintiff with keys to the premises giving her unobstructed access to the entire demised premises. The plaintiff installed telephone service and made phone calls from the premises. The plaintiff took possession of the premises and occupied it pursuant to the lease.
At sometime during the month of July after signing the lease and taking possession the plaintiff received notice from CT Page 14671 Department of Health Services of the State of Connecticut that her license to practice chiropractic medicine in the State of Connecticut had not been approved. Thereafter the plaintiff attempted to notify the defendants in order to cancel the lease. The plaintiff demanded that the plaintiff's full $3600 paid as security deposit and August rent be returned. The defendants refused to return the money.
The defendants filed counterclaims seeking money damages for unpaid rent for the period of time that the premises remained vacant, costs of reletting, attorney's fees and other damages. Robert Barone was withdrawn as a plaintiff.
The plaintiff, Alice Barone, and her husband, Robert Barone, testified that they met with the defendants on several occasions prior to August 1, 1989. On those occasions they claimed they told the defendants and their real estate agent that Alice Barone had recently taken the Connecticut chiropractic examination and was awaiting the results. The court finds that at no time did those statements find their way into the lease. The lease was not contingent upon Alice Barone obtaining the successful completion of her Connecticut chiropractic examination. In fact Article SECOND of the lease states that the plaintiff will not use the premises for any purpose other than a chiropractic office. She signed the lease on a voluntary basis with the acronym D.C. inferred thereby she was licensed and/or otherwise engaged in the practice of chiropractic medicine.
The plaintiff, Alice Barone, testified that she thought she was obligated to carry out the terms of the lease only if she passed the Connecticut exam. This court does not find that statement to be credible. The plaintiff is an educated woman having attained the successful completion of the chiropractic exam in the State of Connecticut. The plaintiff further testified that she thought her lease obligations were terminated since she could not operate a chiropractic office when she failed the exam. This court finds that testimony not to be credible in the light of the clear terms and conditions of the lease.
Furthermore the court finds that during the month of September 1989 the plaintiff successfully appealed the denial of her privileges in the State of Connecticut. She was licensed to practice chiropractic medicine in September 1989 in Connecticut. CT Page 14672 If the plaintiff felt that her lease was contingent upon passing the chiropractic exam then she would be obligated to take possession and engage in her practice at 810 North Street, Bridgeport effective September 1989. The plaintiff has refused to occupy the premises after August 1989 and to pay the rent after she became licensed in the State of Connecticut. She claims as reasons therefore; 1) the neighborhood had deteriorated, 2) there was infestation in the premises, and 3) the plaintiff had no money. None of these reasons justify the cancellation of this lease or create a contingency. Article SECOND is not a contingency clause. It is a standard permitted use clause and its plain meaning does not create a contingency or unilateral right for the plaintiff to terminate the lease.
DISCUSSION OF LAW
The law in the State of Connecticut concerning commercial leases is set forth in Rokalor, Inc. v. Connecticut EatingEnterprises, Inc., 18 Conn. App. 384, 388-389 (1989).
 "When the lessee breaches a lease for commercial property, the lessor has two options: (1) terminate the tenancy; or (2) to refuse to accept the surrender. Sagamore Corporation v. Willcut, 120 Conn. 315, 317-318, 180 A. 464 (1935); Dewart Building Partnership v. Union Trust Co., 4 Conn. App. 683, 687, 496 A.2d 241
(1985). Where the landlord elects to continue the tenancy, he may sue to recover the rent due under the terms of the lease. Under this course of action, the landlord is under no duty to mitigate damages. Dewart Building Partnership v. Union Trust Co., supra. When the landlord elects to terminate the tenancy, however, the action is one for breach of contract; Sagamore Corporation v. Willcut, supra; and, when the tenancy is terminated, the landlord is obliged to mitigate his damages. Dewart Building Partnership v. Union Trust Co., supra. When the tenancy ends, the tenant is released from his obligation under the lease and is, therefore, no longer obliged to pay rent. Feneck v. Nowakowski, 146 Conn. 434, 436, 151 A.2d 891 (1959)."
 "Although the termination of the tenancy releases a tenant from his obligations under the lease, such release does not leave the landlord without legal recourse to recover damages. Where a landlord, as in CT Page 14673 this case, elects to terminate the tenancy and to regain possession of the premises, although he cannot institute an action for rent due under the lease, he may sue for a breach of the lease. Where the action is one for breach of the lease, basic contract principles apply." Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., supra 389."
 Thus, as in any other contract action the measure of damages is that the award should place the injured party in the same position as he would have been had the contract been performed. Lar-Rob Bus Corporation v. Fairfield, 170 Conn. 397, 404-405, 365 A.2d 1086
(1976). As a consequence, the unpaid rent, while not recoverable as such, may be used by the court in computing the losses suffered by the plaintiff by reason of the defendant's breach of contract of lease. The plaintiff would be entitled to recover the damages which would naturally follow from such breach. Sagamore Corporation v. Willcut, supra 320." Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., supra 389; Danpar Associates v. Somersville Mills Sales Room, Inc., 182 Conn. 444, 445-446 (1980).
 CONCLUSION
The plaintiff claims in her complaint that there was never a lease and that she had the unilateral right to terminate the lease. A lease is a contract, and its construction presents a question of law for the court. Robinson v. Weitz, 171 Conn. 545,551 (1976). "In construing a lease the controlling factor is the intent expressed in the lease, not the intent which the parties may have had or which the court believes they ought to have had." Robinson v. Weitz, supra 548. The language in the lease is clear. There is no contingency and there is no right, unilateral or otherwise, for the plaintiff to withdraw from the lease obligations merely because she was unsuccessful in her initial attempt in July of 1989 to pass the Connecticut Chiropractic exam. The court therefore concludes that the plaintiff is not entitled to the return of the security deposit and the August 1989 rent paid on the basis of contingency or unilateral right to terminate. By not paying the September 1989 rent and the rent and costs due thereafter, the plaintiff breached the lease. CT Page 14674
The plaintiff further argues that the lease has been rescinded by reason of impossibility of performance. The alleged impossibility of performance is the plaintiff's failure to obtain the chiropractic permission in July 1989. Neuschtatv. Rosenthal, 87 Conn. 400 (1913) is cited by the plaintiff for support of that proposition. The Neuschtat the lessors agreed to construct and repair buildings on the leased premises. The lessee was to pay as rent a third of the net profits of the farm and the lessee paid a $2,000 security deposit. The lessor did not construct the buildings and the lessee sued claiming that under those circumstances it was impossible to perform the lease and operate the farm at a profit. The court held that the character of the lessor's breach in not constructing the buildings created an impossibility of the lessee working the premises at a profit and therefore the lessee was entitled to treat the lease as repudiated and rescinded.
In the instant case there was no contingency contained in the lease. The facts as found by this court are; that the plaintiff obtained her chiropractic license in September of 1989 and therefore could have fulfilled the terms and conditions of the remainder five year period of the lease starting September 1989. The three reasons given by the plaintiff for her refusal to take September 1989 occupancy are not sufficient to rescind a commercial lease. There is no impossibility of performance. There can be no rescission based upon impossibility of performance in this case. The court so finds. Loveland v.Aymett's Auto Arcade, Inc. 121 Conn. 231, 236-237 (1936),Goldberg v. Callender Bros. Inc., 96 Conn. 182, 189 (1921).
The defendants in the First count of their counterclaim in paragraph 4 have alleged that the defendants have exercised substantial efforts in order to mitigate their damages. The defendants in their trial brief stated. "It is clear in this action for contractual damages O'Connell and Fleming were under a duty to exercise reasonable efforts to mitigate their damages." Therefore the court will consider that the defendants have retaken occupancy of the demised premises and thus have an obligation to mitigate their damages. Dewart BuildingPartnership v. Union Trust Co., supra 687. The defendants offered testimony of "For Rent" signs being placed on the premises at a cost of $297 and advertisements in the Bridgeport Post and Connecticut Law Tribune for a number of months at a cost of $2,069.72. The court finds that the defendants had the obligation to mitigate damages. Mitigation requires reasonable CT Page 14675 efforts to relet the premises. Krevit v. A La Carte Foods, NH-509, February 23, 1990 (DeMayo, J). The burden is on the plaintiff to prove that the defendants failed to use reasonable care to reduce damages. Town of Newington v. GeneralSanitation Service Co., 196 Conn. 81, 86 (1985).
"The duty to mitigate damages did not require the plaintiff to sacrifice any substantial right of its own; or to exalt the interests of the tenant above its own. It was required to make reasonable efforts to minimize damages. What constitutes a reasonable effort under the circumstances of a particular case is a question of fact for the trier." (Internal citations omitted). Danpar Associates v. Somersville Mills Sales Room,Inc., supra 446. The newspaper rental ads offered into evidence covered the period of November 1989 through June 6, 1990. Except for the continual display of a "For Rent" sign on the premises, there was no evidence as to efforts to rent after June 1990. By July 30, 1990 the effect of the last newspaper ad had run its course. Therefore the court concludes upon all the evidence that the defendants failed to adequately mitigate damages and the defendants are not entitled to receive the entire unpaid rent.
The Second count of the counterclaim claims misrepresentation. The court does not have to reach the issue of misrepresentation since it has already concluded that the defendants are entitled to a judgment by reason of the plaintiff's breach of lease in the First count of the counterclaim. The count of misrepresentation is moot.
The plaintiff claims a penalty for the defendants' failure to return the security deposit under Connecticut GeneralStatutes § 47a-21(d)(2). She seeks $4,800 as double damages. The court has found that the plaintiff breached the lease and therefore is not entitled to the return of the security deposit. The court further finds that § 47a-21 relates only to residential real property. "Landlord means any landlord of residential real property, includes (A) any receiver; (B) any person who is a successor to a landlord or to a landlord's interest; (C) any tenant who sublets his premises". Connecticut General Statutes§ 47a-21(6). The lease is for commercial premises.Connecticut General Statutes § 47a-21 and any of its subsections are not applicable to commercial premises. Hoban v. Masters,36 Conn. Sup. 611, 613 (1980). CT Page 14676
The plaintiff claims that she is entitled to interest on the $2400 security deposit pursuant to Connecticut GeneralStatutes § 47a-21. For the reasons stated above interest on security deposit does not apply to commercial premises unless the lease specifically states. There is no lease provision requiring the landlord to pay interest on the security deposit.
Judge Vertefeuille in rejecting the attorney trial referee's report stated that rescission must be specially pleaded. The plaintiff has specially pleaded rescission. The court permitted the amended counterclaim and special defenses on August 4, 1995. Boston Lumber Co. v. Pendleton Bros. Inc., 102 Conn. 626,633 (1925). The court has already concluded that the plaintiff had no right to rescind this lease. There was no mutual agreement to rescind by the parties. The plaintiff has been found to have breached the lease and is obligated to pay damages by reason of that breach.
The issue for the court to decide is the amount of damages and to the extent that the defendants' failed to mitigate those damages, what limitations there will be on the period of time damages be ordered by this court.
The defendants received the sum of $1,000 from an individual named Lisa Russell for rent of the premises on the first floor. The plaintiff is entitled to credit for the following sums; (1) $2,400 security deposit paid (2) $1,200 paid for the August 1989 rent, and (3) $1,000 received from Lisa Russell who failed to occupy the premises and to pay any further rent, for the first floor premises.
The defendants are claiming as damages lost rent from September of 1989 through and including July of 1994; the entire five years of the lease being the sum of $79,200. The court has found that the defendants have failed to mitigate their damages. Based upon all the circumstances a fair and reasonable rent obligation for the plaintiff to pay is a period of one year in the amount of $1,200 per month. August 1, 1989 until July 30, 1990; $14,400. The plaintiff is further obligated to pay pursuant to the Article NINTH (a) of the lease $955 for real estates taxes for that one year. Article NINTH (c) requires the plaintiff to pay insurance for the entire building even though the plaintiff only occupied the first floor of a three story building. The court finds that the plaintiff must pay $2,861.00 for the first year's insurance. Costs of reletting CT Page 14677 are set forth in Article THIRD A of the lease: "The tenant shall be liable to the landlord for the cost of ___ such reletting.": The defendants' payment of $297 for a sign and $2069.72 for newspaper ads is found to be the reasonable costs of reletting which costs the plaintiff ought to pay.
Attorney's fees are claimed at the rate of $150 per hour for 35 hours; a claim of $5,250.00. This court has the obligation to review the file to determine the adequacy of attorney's fees. The file consists of two separate file folders. The trial was commenced on February 21, 1990 before an attorney trial referee. Substantial discovery motions were filed as well as numerous other motions, revised complaints and counterclaims. Legal research was conducted and memoranda of law were filed. The court based on its own experience determines that $150 an hour is a fair and reasonable charge. The court after review of the file further determines that 35 hours is a fair and reasonable amount of time spent by counsel in this particular. The court therefore awards attorney fees pursuant to Article TWENTY-EIGHT of the lease in the amount of $5,250.00.
The total award to the defendants on the First count of its counterclaim against the plaintiff, Alice Barone, less credit to the plaintiff is as follows:
Rent — 1 year August 1, 1989 — July 31, 1990 $14,400.00
Real estates taxes — 1 year 955.00
Insurance — 1 year 2,861.00
Costs of reletting — sign 297.00
Costs of reletting — advertising 2,069.72
Attorney fees 5,200.00 -------- Total due defendants $25,782.82
Less credits to Plaintiff
Security Deposit $2,400.00
August 1, 1989 rent paid 1,200.00 CT Page 14678
Lisa Russell payment 1,000.00 -------- Total credit to plaintiff $4,600.00
The total award to the defendants on the First count of its counterclaim against the plaintiff, Alice Barone, is $21,182.72.
The court will note that Robert Barone has been withdrawn as a plaintiff in the case. Mr. Barone did not sign or guarantee the lease nor is he obligated in anyway concerning the lease. The counterclaim issues have not been withdrawn by the defendants as against either of the plaintiffs. The court finds issues on the counterclaim in favor of the plaintiff, Robert Barone.
The court finds that the rent and other damages have been unreasonably withheld by the plaintiff, Alice Barone. CecioBrothers, Inc. v. Feldmann, 161 Conn. 265, 275 (1971). Interest at the rate of 10% is awarded on $21,382.72 from August 1, 1991 through November 30, 1995 in the amount of $11,297.44.Connecticut General Statutes § 37-3a.
The issues on the counterclaim are found in favor of the defendant, Robert Barone. The issues on the plaintiff's complaint are found in favor of the defendants.
A judgment in favor the defendants on the First count of the counterclaim will enter against the plaintiff, Alice Barone, in the amount of $32,480.16 plus costs.
BY THE COURT,
KEVIN TIERNEY, JUDGE